UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21-CR-00535 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY BEARD, | ) | SENTENCING MEMORANDUM |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Rebecca C. Lutzko, United States Attorney, and Adam J. Joines, Assistant United States Attorney, to file this Sentencing Memorandum. This Court should calculate Timothy Beard's total offense level (after acceptance of responsibility) as a 23 and his criminal history category as category IV, for a Guideline range of 70 to 87 months. This Court should first find that Beard's offense level under the United States Sentencing Guidelines is 26 because his prior convictions for aggravated robbery in violation of Ohio Revised Code §§ 2911.01(A)(1) and 2911.02(A)(3) are crimes of violence as defined in U.S.S.G. §4B1.2(a)(2). The Court should further determine, consistent with the factors under 18 U.S.C. § 3553(a), that Beard should not be given a lower sentence than he initially received. Put differently, a sentence of, at minimum, 46 months would be sufficient, but not greater than necessary, to provide just punishment for Beard's offense, afford adequate deterrence to criminal conduct, and protect the public from gun-wielding felon. *See* 18 U.S.C.§ 3553(a)(2).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Beard Possesses Two Firearms After Multiple Felony Convictions.

On February 17, 2021, Defendant-Appellant Timothy Beard possessed two loaded handguns that he threw out of a car window during a police pursuit. (R. 52: Presentence Investigation Report (sealed), PageID 284). Elyria police officers attempted to pull Beard's car over, at which point Beard ignored officers' signals by continuing to drive. (*Id.*). During the pursuit, Beard threw one gun out of the front passenger window and attempted to throw the second one over the front passenger, but it landed on the floor. (*Id.*). Officers arrested Beard. (*Id.*). On July 14, 2021, a grand jury in the Northern District of Ohio charged Beard with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*Id.*; R. 13: Indictment, PageID 36). Beard pled guilty to the indictment, without a plea agreement, in October 2021. (R. 52: PSR, PageID 116; R. 43: Plea Trans., PageID 223–43). Beard then appealed his sentence to the Sixth Circuit, arguing that this Court's guideline calculation incorrectly determined his prior conviction for aggravated robber under O.R.C. § 2911.01(A)(1) is not a Guidelines crime of violence. The United States opposed, and on May 22, 2023, the Sixth Circuit issued its unpublished opinion to hold that an offense under § 2911.01(A)(1) did not meet the generic definition of robbery such that it could be a crime of violence under Guideline §4B1.2(a)(2). The opinion did not reach the United States' alternative argument that the offense met the Guideline definition of extortion, finding that the United States forfeited the argument by failing to raise it in their merits briefs. *See* Ex. A: *Beard* Order at 6–7.

### B. Subsequent Developments in Case Law Related to Ohio Robbery Offenses.

Since Beard was originally sentenced on April 15, 2022, the Sixth Circuit has issued multiple opinions, both published and unpublished, regarding whether certain offenses qualify as

Guidelines crimes of violence. On January 31, 2023, the Sixth Circuit held in *United States v. Jamael White*, 58 F.4th 889 (6th Cir. 2023), that a conviction for aggravated robbery under O.R.C. § 2911.01(A)(1) did not count as a predicate crime of violence under the ACCA. The *White* opinion did not discuss whether a § 2911.01(A)(1) conviction was a crime of violence under the Guidelines definitions in §4B1.2(a). Following *White,* the United States took the position that a § 2911.01(A)(1) conviction would not count as a crime of violence as defined in Guideline §4B1.2(a)(1) because the ACCA definition and that definition are largely the same. It continued to argue, however, that a § 2911.01(A)(1) conviction would still be a crime of violence as an enumerated offense under Guideline § 4B1.2(a)(2), specifically because it meets the definition of either "robbery," "extortion," or both. On May 22, 2023, the Sixth Circuit issued its unpublished opinion in this case, *United States v. Timothy Beard*, Case No. 22-3398.

On June 2, 2023, the Sixth Circuit published its opinion in *United States v. Jarmaine Carter*, 69 F.4th 361 (6th Cir. 2023), which holds that a different robbery statute, O.R.C. § 2911.02(A)(2), was a Guidelines crime of violence under §4B1.2 that could enhance a firearm conviction. It determined that the elements of § 2911.02(A)(2) are "the same as, or narrower than," the Guidelines' elements of extortion. (*Id.* at *3). This meant that § 2911.02(A)(2) robbery met the Guidelines' definition for crime of violence because, under the categorical approach, it was not broader than the Guideline definition of extortion. *Id.* (quoting *United States v. Camp*, 903 F.3d 594, 599 (6th Cir. 2018)). After Carter petitioned for a rehearing en banc, the Sixth Circuit denied the request. (*See* R. 53: Notice of Supplemental Authority).

On August 29, 2023, Pretrial Services issued its revised Final Presentence Investigation Report. (R. 52: Final PSR (sealed), PageID 280–300). This PSR calculated Mr. Beard's offense level as 23 (after acceptance of responsibility) over Mr. Beard's objection to find that both his

convictions for § 2911.01(A)(1) aggravated robbery and § 2911.02(A)(3) robbery were crimes of violence because, consistent with *Carter*, each meets the Guideline definition of extortion. (*Id.*, PageID 285 (calculation), 300 (response to Mr. Beard's objection). This PSR included unresolved objections by both Mr. Beard regarding the offense level calculation and the United States regarding an additional criminal history point for Mr. Beard's kidnapping offense. (*Id.*, PageID 298–300).

## II. LAW AND ARGUMENT

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007). After that, it must analyze the factors in 18 U.S.C. § 3553(a). Appellate courts must review a district court's sentence for procedural and substantive reasonableness. *Id.* at 51. Although a reviewing court applies "a rebuttable presumption of substantive reasonableness" to a within-Guidelines sentence, it "may not, however, apply a presumption of unreasonableness to outside-Guidelines sentences." *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). In fact, criminal defendants "must surmount a high bar to succeed on a substantive-reasonableness challenge even to an upward variance." *United States v. Thomas*, 933 F.3d 605, 613 (6th Cir. 2019). A reviewing court is most deferential to an above-Guidelines sentence when the district court's decision to vary upwards is based on the court's determination that a defendant's unique circumstances make the defendant's circumstances fall "outside the 'heartland' of cases" for which the Guidelines range is most suited. *See United States v. Boucher*, 937 F.3d 702, 708–09 (6th Cir. 2019).

A. Advisory Guidelines Calculation

Consistent with the PSR, the United States believes Beard's offense level guideline calculation is:

| **U.S.S.G. § 2K2.1: Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition** | | |
|---|---|---|
| Base offense level | 26 | §2K2.1(a)(1) |
| Special Offense Characteristic – None | | |
| **TOTAL** | **26** | |

(*See id.*, ¶¶285). Beard's base offense level begins at 26 because (1) one of his firearms was equipped with a large capacity magazine, and (2) he was convicted of possessing a firearm and ammunition subsequent to sustaining two felony convictions of either a crime of violence or a controlled substance offense. USSG §2K2.1(a)(1). Beard does not dispute that he possessed a gun with a large capacity magazine.

Regarding the Guideline calculation, this Court must principally address whether Beard's aggravated robbery conviction under § 2911.01(A)(1) and his robbery conviction under § 2911.02(A)(3) are Guidelines crimes of violence. A prior conviction can qualify as a "crime of violence" in two separate ways: under the elements clause, or under the enumerated-offenses clause. U.S.S.G. § 4B1.2(a)(1), (2). Under the categorical approach, courts must "assume that [the defendant's] conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts would qualify as a crime of violence under the guidelines." *Camp*, 903 F.3d at 599. Unlike the ACCA context, the Guidelines' enumerated clause includes "robbery" and "extortion" among its listed crimes. U.S.S.G. § 4B1.2(a)(2). The United States concedes that the Sixth Circuit's decision in *White*, which stated that a § 2911.01(A)(1) conviction does not qualify as a violent felony under the ACCA (58 F.4th at 895-96, 897), applies to Guideline § 4B1.2(a)'s identically worded elements clause. It further

recognizes that the Sixth Circuit determined in this case that Beard's § 2911.01(A)(1) offense does not meet the generic robbery definition referenced in Guideline § 4B1.2(a)(2).[1] The Sixth Circuit did not address Beard's prior conviction under § 2911.02(A)(3). Nonetheless, each of Beard's prior convictions continues to qualify as a Guidelines crime of violence because each meet the enumerated offense definition of extortion.

B. Beard's Conviction under § 2911.01(A)(1) Is a Crime of Violence.

Ohio Rev. Code § 2911.01(A)(1) provides:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it . . . .

The Guidelines define extortion as: "obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury." U.S.S.G. §4B1.2, comment. (n.1); *see Camp*, 903 F.3d at 602 (citing definition and analyzing it in the context of 18 U.S.C. §§ 1951(a) and 924(c)). The Sixth Circuit has already held that certain elements for aggravated robbery in § 2911.01(A)(1), which are shared in the offense of robbery under § 2911.02(A)(2),[2] meet the Guidelines definition of extortion. The Court in *Carter* held first that

---

[1] The United States continues to argue in other cases that § 2911.01(A)(1) meets the generic definition of robbery. Before the *Beard* decision, at least two judges of this Court agreed with the United States on that issue. *See United States v. Hall*, No. 5:22-CR-103, ECF No. 43, PageID 264-69 & n.5 (N.D. Ohio Apr. 18, 2023) (Pearson, J.) (attached hereto as Exhibit C); *United States v. Dailey*, No. 1:21-CR-414, ECF No. 103, PageID 889-90 (N.D. Ohio) (Adams, J.) (transcript of sentencing proceedings that includes findings by the Court that § 2911.01(A)(1) meets both the generic robbery and Guideline extortion definitions). The United States is not aware of any published Sixth Circuit opinion holding that § 2911.01(A)(1) does not meet the generic definition of robbery.

[2] "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the

"theft or attempted theft" is "narrower than the corresponding requirement in the Guidelines" definition of extortion. 69 F.4th at 363–64. Both Ohio's aggravated robbery and robbery statutes use the same language to describe the underlying theft offenses that can support a robbery conviction, so the *Carter* analysis applies with equal force to Beard's conviction here. *Carter* also held that the Ohio robbery statute's requirement of inflicting physical harm "during theft or while 'fleeing immediately after'" does not take that statute outside the Guideline definition of extortion. 69 F.4th at 364. Its conclusion that "Ohio robbery isn't broader than Guidelines extortion" applies equally to the identical statutory requirement for aggravated robbery. *Id.* The last issue in deciding whether aggravated robbery is a categorical match to extortion, therefore, is whether displaying, brandishing indicating possession, or using a deadly weapon is a match for any of (A) force, (B) fear of physical injury, or (C) threat of physical injury." U.S.S.G. §4B1.2, comment. (n.1).

Relying on a deadly weapon to further a robbery constitutes force, fear of injury, and threats against the person. The Ohio Supreme Court has held, in analyzing § 2911.01(A)(1), that the "very act of displaying, brandishing, indicating possession, or using the weapon . . . intimidates the victim into complying." *Ohio v. Evans*, 911 N.E.2d 889, 894 (Ohio 2009). It determined that, in the context of a theft offense, the offender's possession of the deadly weapon itself "constitutes the threat to inflict harm" on the victim. *Id.*; *see also Ohio v. Harris,* 911 N.E.2d 882, 885 (Ohio 2009) ("The possession of a deadly weapon, used, shown, brandished, or made known to the victim during a theft . . . also constitutes a threat to inflict physical harm on

---

attempt or offense, shall do any of the following: . . . (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; . . ." O.R.C. § 2911.02(A)(2).

that victim."). The threat, whether explicit or implied, meets any of—arguably all three—alternative means of committing Guidelines extortion. In the very least, indicating possession of a deadly weapon constitutes the necessary "threat of physical injury," meaning an offender cannot commit § 2911.01(A)(1) aggravated robbery without also committing this element of extortion. Because it meets the remaining elements, § 2911.01(A)(1) is not broader than the Guidelines definition of extortion, meaning it counts as an enumerated crime of violence under §4B1.2(a)(2).

This commonsense conclusion is confirmed not only by the Ohio Supreme Court decisions just discussed, but also by what the Sixth Circuit has "colloquially called" the "'deadly weapon rule.'" *See United States v. Burris*, 912 F.3d 386, 405 (6th Cir. 2019) (*en banc*). Under that rule, "'when a felony must be committed with a deadly weapon and involves some . . . threat of physical force,'" it necessarily involves "use, attempted use, or threatened use of violent force." *Id.* (internal quotation omitted). This rule confirms that Beard's Ohio aggravated robbery conviction—which necessarily involved deadly weapons—is a categorical match for Guidelines extortion, which is satisfied by force, fear of physical injury, or threat of physical injury.

C. <u>Beard's Conviction under § 2911.02(A)(3) Is a Crime of Violence.</u>

Ohio Rev. Code § 2911.01(A)(3) provides:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (3) Use or threaten the immediate use of force against another.

In 2017, the Sixth Circuit held that § 2911.02(A)(3) is not a crime of violence under the force clause in Guideline §4B1.2(a)(1) or as an enumerated robbery under Guideline §4B1.2(a)(2).

*United States v. Yates*, 866 F.3d 723, 725 (6th Cir. 2017). The *Yates* court did not consider, however, whether that offense meets the Guideline definition of extortion of "obtaining something of value from another by the wrongful use of (A) force, (B) fear of physical injury, or (C) threat of physical injury." U.S.S.G. §4B1.2, comment. (n.1). This statute meets the elements of that definition. Like with aggravated robbery and § 2911.02(A)(2) robbery at issue in *Carter*, attempting or committing a theft offense qualifies as "obtaining something of value from another." *Carter*, 69 F.4th at 363. Sustaining a robbery conviction under § 2911.02(A)(3) further requires Ohio to show that the defendant used or threatened the immediate use of force against another person. This categorically meets the options of (A) and (C) in the Guideline extortion definition. Given *Carter,* it would follow that § 2911.01(A)(3) meets the same categorical definition for extortion.

***

Because he has two crime of violence convictions and possessed a firearm with an extended magazine, Beard meets all the requirements of §2K2.1(a)(2) to make his base offense level 26. Such a finding would be consistent with the Guideline calculation in the Revised PSR. (R. 52: PSR, PageID 285). Beard has timely accepted responsibility and therefore receives the appropriate acceptance reduction in his offense level. (*Id.*, PageID 285–86). His total offense level is therefore 23. (*Id.*).

D. Criminal History Category.

Beard's prior criminal convictions result in a subtotal criminal history score of 6. (R. 52: PSR, PageID 288). Because the instant offense was committed while Beard was under a criminal justice sentence (specifically Post Release Control for convictions in Cuyahoga County Court of Common Pleas, *see id.*), he receives 2 additional criminal history points. U.S.S.G.

§4A1.1(d).[3] Beard's total criminal history category score of 8 places him in criminal history category IV. (*Id.*, PageID 289).

The United States' objected to the PSR's determination that Mr. Beard's prior kidnapping offense is not a crime of violence that adds 1 point to his criminal history score under Guideline §4A1.1(e). Preliminarily, whether Mr. Beard has 8 or 9 criminal history points, he is still a category IV. The Court therefore need not resolve this issue for it to find that Beard would be a category IV under the current Guidelines. But should Mr. Beard suggest he is entitled to a variance because upcoming amendments to the Guidelines might remove 2 points from his total score, the additional criminal history point for kidnapping would also change his score from a 6 (category III) to a 7 (category IV). Although the parties agree that Mr. Beard is a category IV when using the current Guidelines, it is important for the Court to consider this in the variance context, even if it declines to address the issue directly.

Regardless, kidnapping is a crime of violence. O.R.C. § 2911.01(A)(2) states "No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: . . . (2) To facilitate the commission of any felony or flight thereafter." The case *United States v. Soto-Sanchez*, 623 F.3d 317, 323 (6th Cir. 2010) discusses the elements of generic kidnapping, including various states and the Model Penal Code definition. That case addressed primarily

[3] The United States recognizes that proposed amendments to the Guidelines might remove these additional 2 points for someone like Beard who does not have a significant number of prior felony convictions. Any adjustment for this anticipated amendment, however, is not part of the Guidelines calculation. Such an adjustment for amendments not yet in effect would occur as a variance outside of the Guidelines and pursuant to the 18 U.S.C. § 3553(a) factors.

whether the generic offense kidnapping requires more than unlawful confinement or restraint of the victim. It concluded that "the generic offense of kidnapping requires restraint plus the presence of some aggravating factor, such as circumstances that create a risk of physical harm to the victim, or movement of the victim from one place to another." *United States v. Soto-Sanchez*, 623 F.3d 317, 323 (6th Cir. 2010).

O.R.C. 2905.01(A)(2) is not broader than this generic kidnapping offense definition. First, it requires restraint as the Sixth Circuit uses the term in *Soto-Sanchez*, which is "unlawful confinement or restraint." Within these ideas lie the Ohio statute requirement that a perpetrator "remove another from the place where the other person is found or restrain the liberty of the other person" to be found guilty of kidnapping. Second, it has an aggravating factor in requiring that the restraint be "to facilitate the commission of any felony or flight thereafter." Although *Soto-Sanchez* discusses a Michigan statute in detail and does not apply any analysis to Ohio law, it does reference the Ohio statute because for a conviction under Section 2905.01, "some other aggravating factor is required, such as exposing the victim to a risk of physical injury." *Id.* The Model Penal Code's definition of kidnapping includes Ohio's (A)(2) requirement word-for-word as an itemized improper purpose for kidnapping. *See Soto-Sanchez*, 623 F.3d at 322 (citing the MPC definition but declining to adopt it directly, instead opting for the less limited definition of restraint + aggravating factor). Because the statute requires that the restraint be for one of these additional purposes, it likewise has the aggravating factor that *Soto-Sanchez* requires.

E. Sentencing Guideline Calculation.

Based on an offense level of 23 and criminal history category of IV, Beard's sentencing guideline range is 70–87 months. The statutory maximum term of imprisonment for violations

of 18 U.S.C. § 922(g)(1) was, at the time of Beard's offense, 10 years. 18 U.S.C. § 924(a)(2) (2018).

Beard was previously sentenced to 46 months by the Court. Although his Guideline range is higher than the calculation during his first sentencing (46-to-57 months), and the United States previously argued that Beard should be sentenced to the higher end of the earlier guideline range, the Court should address all factors under 18 U.S.C. § 3553(a) toward imprisoning Beard for a sufficient length of time that is not greater than necessary.

Pursuant to 18 U.S.C. § 3553(a):

> The court, in determining the particular sentence to be imposed, shall consider:
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentence, and the sentencing range . . . ;
> (5) any pertinent policy statement . . . ;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. . . .

1. Nature and Circumstances of the Offense.

Beard possessed two firearms during a car chase away from police. (R. 52: PSR, PageID 284). During the chase, Beard tried throwing them out of the car after hiding them in socks. (*Id.*). Although he stated the firearms were for protection, one of the guns had an 18-round magazine. (*Id.*). Beard cannot carry firearms because he has committed violent offenses in the past, each one while he carried a gun. (*Id.*, PageID 287–88). Beard has shown that when he carries guns, he's apt to use them to commit crimes. Beard not only created a dangerous

situation by having the guns in the first place, he exacerbated the problem by trying to throw them out of a moving car, over his passenger, during a police chase.

2. Beard's Criminal History and Characteristics.

Beard does not have a lengthy criminal history, though the crimes he did commit are serious. In 2008 and 2009, Beard robbed other people while carrying a gun. He further kidnapped a victim during one of the robberies. (*Id.*, PageID 288). Although notable that Beard appears to have avoided additional criminal convictions between these priors and his current federal case, he did have an altercation while in lockup. (*Id.*, PageID 283).

3. The Need for the Sentence to Afford Adequate Deterrence; for the Sentence to Reflect Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment; and for the Sentence to Protect the Public.

This Court should take into account the various needs in finding an appropriate sentence for Beard's crime. While in prison, Beard has refused his work assignment, fought with other inmates, and failed to complete a drug education class. (*Id.*, PageID 283). Beard has been designated as medium security and a "high-risk for recidivism." (*Id.*). Beard does not appear to respect the law such that he willingly participates in programs that could help him. Regardless, the Court is well-aware of Beard's history and how imposing its sentence will meet the needs of society as described in the statute.

## III. CONCLUSION

For the foregoing reasons, this Court should find that Beard's Guideline offense level (after acceptance) is 23, but should weigh all factors, as it did during the initial sentencing, to fashion an appropriate sentence in light of the § 3553(a) factors. The United States will be prepared at the sentencing hearing to elaborate on these points, answer the Court's questions, and refute additional argument from Beard in support of a lesser sentence.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By: /s/ Adam J. Joines

Adam Joines (OH: 0094021)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3929
(216) 522-8354 (facsimile)
Adam.Joines@usdoj.gov